UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LOPEZ (A-206-648-025), | No. 2:26-cv-1072 DAD CSK |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| IMMIGRATION AND CUSTOMS ENFORCEMENT, | |
| Respondent. | |

Petitioner Jose Lopez (A-206-648-025), a native and citizen of Honduras, who is proceeding without counsel, entered the United States on April 23, 2014, has filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioner was initially detained by U.S. Customs and Border Protection inside the United States. On June 4, 2014, petitioner was released on bond after an asylum officer found that petitioner demonstrated a credible fear of persecution or torture. On December 13, 2025, petitioner was arrested and re-detained by immigration officials and has been in continuous detention since this date. This habeas action concerns petitioner's re-detention.

---

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

Pending before the Court is respondents' motion to dismiss.  (ECF No. 7.)  For the reasons that follow, the Court recommends that respondents' motion to dismiss be denied, the petition for writ of habeas corpus be granted and petitioner be immediately released.

## I.    FACTUAL BACKGROUND[2]

Petitioner is a native and citizen of Honduras.  (ECF No. 10-1 at 12.)  On April 23, 2014, petitioner entered the United States without inspection and was detained by U.S. Customs and Border Protection.  (Id. at 2-3, 12.)  Petitioner was initially placed in expedited removal proceedings pursuant to Immigration and Nationality Act ("INA") section 235(b)(1), 8 U.S.C. § 1225(b)(1).  (Id. at 5.)  On May 21, 2014, the expedited removal order was cancelled after an asylum officer found that petitioner demonstrated a credible fear of persecution or torture.  (Id. at 5, 12, 14-24 (Record of Determination/Credible Fear Worksheet).)  On May 21, 2014, petitioner was issued a Notice to Appear in INA Section 240 (8 U.S.C. § 1229a) removal proceedings, which are standard removal proceedings.[3]  (Id. at 12-13.)  The Notice to Appear charged petitioner as a noncitizen present in the United States without being admitted or paroled or who arrived in the United States at any time or place other than as designated by the Attorney General in violation of INA section 212(a)(6)(A)(i)(1), 8 U.S.C. § 1182(a)(6)(A)(i)(1).  (Id. at 12.)  The Notice to Appear also stated that it was issued "after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture" and expressly stated that the Section 235(b)(1) order, 8 U.S.C. § 1225(b)(1), was cancelled pursuant to 8 C.F.R. § 208.30(f)(2).  (Id.)  The date of appearance noted, "To Be Determined."  (Id.)  On June 4, 2014, petitioner was released on a $7,500 bond.  (Id. at 10.)  Petitioner has no criminal history.  (ECF No. 10-1 at 3, 27-28.)

On December 13, 2025, petitioner was arrested by immigration officials in New Jersey

---

[2]   Petitioner filed a verified habeas petition.  (ECF No. 1 at 9.)  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit."  L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)).  Respondents do not contest petitioner's factual allegations.  (See ECF No. 7.)

[3]   Removal proceedings pursuant to 8 U.S.C. § 1229a (INA § 240) are standard removal proceedings, which are different from expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)).

while petitioner was at a rental car office.  (See ECF No. 1 at 6; ECF No. 10-1 at 27.)  In the verified petition, petitioner states that at the time of his arrest, he was not shown legal documentation or told the reason he was arrested.  (ECF No. 1 at 6.)

This Court observes that the record, including the December 13, 2025 I-213 form, contains no information regarding the status of petitioner's asylum application.  (See ECF No. 10-1 at 27.)

## II.    PROCEDURAL BACKGROUND

On March 23, 2026, petitioner filed his petition for writ of habeas corpus.  (ECF No. 1.)  On April 1, 2026, respondents filed a motion to dismiss.  (ECF No. 7.)  On April 14, 2026, this Court ordered respondents to file any and all Notices to Appear, release orders, supervision orders, detention orders and a supplemental brief limited to addressing these documents by April 17, 2026.  (ECF No. 9.)  This Court ordered that within 10 days of being served with the additional documents submitted by respondents and any supplemental brief, petitioner may file an optional response.  (Id.)  On April 17, 2026, respondents timely filed a supplemental brief, additional documents and proof of service on petitioner.  (ECF Nos. 10, 11.)  Ten days passed from April 17, 2025 and petitioner did not file a response.  (See docket.)  Briefing is now complete.

## III.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533

3

U.S. 678, 687 (2001).

IV.    DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention).  In the petition, petitioner does not identify the legal grounds of his challenge to his re-detention.  (ECF No. 1 at 6.)  Because petitioner is proceeding pro se and pro se pleadings are liberally construed, the Court construes the petition challenging his re-detention as involving "fault or negligenc[e]" by U.S. Immigration and Customs Enforcement ("ICE") and seeking release to raise a Fifth Amendment procedural due process claim and a statutory claim under the INA.  In the motion to dismiss, respondents appear to have construed the petition to raise two claims: (1) a statutory claim under the INA; and (2) a Fifth Amendment due process claim.  (See ECF No. 7.)  Therefore, there is no prejudice in the Court's construction.  Respondents do not argue that petitioner is a flight risk or a danger to the community.  (See ECF Nos. 7, 10.)  In the motion to dismiss, respondents argue that petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  (ECF No. 7 at 1.)  Respondents also request that this action be stayed pending the Ninth Circuit's decision in Rodriguez v. Bostock, no. 25-cv-6533 (9th Cir.).  (Id. at 2.)  In the supplemental briefing, respondents now argue that petitioner is not entitled to a pre-deprivation hearing because "as an applicant for admission" petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(1)(B)(ii).  (ECF No. 10 at 1.)

**A.  Statutory Claim**

The first issue here is whether petitioner, who has no criminal record and has lived in the United States out of custody since he was released by immigration officials in June 2014 on bond, is subject to discretionary release, or whether petitioner is now subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii), as respondents argue in the supplemental briefing.[4]  (ECF No.

---

[4]  Because respondents have changed their argument as to the basis for petitioner's detention in their supplemental brief, the Court does not address their initial argument that petitioner was detained pursuant to 8 U.S.C. § 1225(b)(2)(A), an argument which also fails.  (Compare ECF No. 7 at 1-2, with ECF No. 10 at 1.)

10 at 1.)  Respondents argue that petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii) because he is subject to expedited removal.  (Id.)

An applicant for admission is normally ordered removed "without further hearing or review" pursuant to an expedited removal process.  8 U.S.C. § 1225(b)(1)(A)(i).  But if the noncitizen "indicates either an intention to apply for asylum ... or a fear of persecution," then that noncitizen is referred for an asylum interview.  8 U.S.C. § 1225(b)(1)(A)(ii).  While awaiting this credible fear interview and determination, the noncitizen shall be detained.  8 U.S.C. § 1225(b)(1)(B)(iii)(IV).  If an immigration officer determines after the interview that the noncitizen has a credible fear of persecution, "the [noncitizen] shall be detained for further consideration of the application for asylum."  8 U.S.C. § 1225(b)(1)(B)(ii).

8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022).  Section 1226(a) provides that,"[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Unlike § 1225(b)(1)(B)(ii), noncitizens who fall under § 1226(a) are not subject to mandatory detention.  Pending a removal decision, the Attorney General may continue to detain an arrested noncitizen, release them on bond, or release them on conditional parole, unless they fall within certain exceptions involving criminal offenses and terrorist activities.  See 8 U.S.C. § 1226(a) (1)-(2), (c).  Under § 1226(a), the government makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding."  Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)).  Section 1226(a) provides "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change."  Id. at 1202.  Therefore, "[i]f the noncitizen is detained under section 1226(a), she is entitled to a bond hearing."  Labrador-Prato v. Noem, 2025 WL 3458802, at *3 (E.D. Cal. Dec. 2, 2025) (citing Jennings v. Rodriguez, 583 U.S. 281, 306 (2018)).

The Court concludes that § 1226(a) applies to petitioner. There are multiple problems with respondents' arguments. After petitioner was found to have a credible fear of persecution or torture, petitioner was issued a Notice to Appear on May 21, 2014, where the government expressly vacated the 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)) expedited removal order and instead placed petitioner in standard removal proceedings under 8 U.S.C. § 1229a. (See ECF No. 10-1 at 5, 12.) Under immigration law, there are two different proceedings for removing noncitizens: Section 240 removal proceedings pursuant to 8 U.S.C § 1229a or expedited removal proceedings pursuant to 8 U.S.C § 1225(b)(1) (INA Section 235(b)(1)). In addition, on June 4, 2014, petitioner was released from immigration custody on bond. (Id. at 10.) Petitioner remained out of immigration custody on release for over eleven years from June 2014 until December 2025 when he was re-detained. Accordingly, this Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations. See Rubio Gomez v. Bondi, 2026 WL 788805, at *2 (D. Nev. Mar. 20, 2026) ("[W]here a petitioner has been 'treated by Respondents as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225,'" the former applies. [...] Section "1225(b)(1) only mandates detention of noncitizens arriving in the United States during the pendency of expedited removal proceedings and the credible fear interview and review process," which ceased in petitioner's case nearly two years ago when he received a credible fear determination and was released from ICE custody upon being placed in standard removal proceedings."). Respondents' argument that § 1225(b)(1)(B)(ii) applies to the December 2025 re-detention thus fails. See id. "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." Jennings, 583 U.S. at 306 (citing 8 CFR §§ 236.1(d)(1)). If, at this hearing, the detainee demonstrates that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the immigration judge will order his or her release. Rodriguez Diaz v. Garland, 53 F. 4th at 1197 (citing Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). As such, petitioner should have been provided a bond hearing before his re-detention.

## B. Due Process Claim

Respondents argue petitioner's due process claim fails because petitioner does not possess

a right to freedom from immigration detention in any form other than the form provided by Congress.  (ECF No. 7 at 2.)  Respondents' arguments do not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]"  Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  Foucha v. Louisiana, 504 U.S. 71, 80 (1992).  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas, 533 U.S. at 693.  "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary."  Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps:  the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution."  Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).  The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997).  Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute.  See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context).  To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey."  Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation

7

marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Here, petitioner's initial detention and subsequent release on bond in June 2014 are similar because it allowed petitioner to live in the United States free of custody for over eleven years. Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482. During that time, petitioner obtained authorization for employment and is self-employed. (See ECF No. 1 at 10.) This Court finds that petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest.

Petitioner's release was premised upon a finding that, at the time of petitioner's release, he was not dangerous nor a flight risk. See 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in [8 U.S.C. § 1226](c)(1), under the conditions at section [8 U.S.C. § 1226](a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); F.M.V. v. Wofford, 2025 WL 3083934, at *1 (E.D. Cal. Nov. 4, 2025). In light of all of the foregoing, the Court finds that petitioner's prior release created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk and did not pose a danger to the community. See Perry v. Sindermann,

8

408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest); F.M.V., 2025 WL 3083934 at *4.  This Court concludes that petitioner has a protected liberty interest in his release.  See Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest); F.M.V., 2025 WL 3083934 at *4-5.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).  In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."  Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted).  Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.  Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention.  "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").  For over eleven years, petitioner was free from custody before his re-detention.  During that time, petitioner obtained work authorization and is self-employed.  (See ECF No. 1 at 10.)  The duration of his conditional release elevates and underscores his interest in liberty.  See Pinchi v.

Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondents do not contend that petitioner is or was a flight risk or a danger to the community. (See generally ECF Nos. 7, 10.) In addition, respondents do not contend that petitioner has a criminal record and the record indicates petitioner has no criminal history. (Id.; see ECF No. 10-1 at 3, 27-28.)

Here, petitioner has been detained since December 13, 2025, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. No neutral arbiter has determined whether petitioner is a flight risk or a danger to the community. Respondents must demonstrate that petitioner's re-detention is reasonably related to a valid government purpose. See Zadvydas, 533 U.S. at 690; see, e.g., Rodriguez Diaz v. Kaiser, 2025 WL 3011852, at *11 (N.D. Cal. Sept. 16, 2025) ("If respondents wish to establish that re-detention is warranted by raising the effect of . . . [petitioner's] six alleged bond violations, a hearing before a neutral adjudicator provides a forum to do so."); see also Cajina v. Wofford, 2025 WL 3251083, at *1, 6 (E.D. Cal. Nov. 21, 2025) (ordering petitioner's immediate release and enjoining and restraining respondents from re-detaining petitioner absent a pre-detention hearing, despite petitioner being charged with driving under the influence).

As to the third Mathews factor, this Court recognizes that the government has an interest

10

in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. In addition, here, the government's interest is even lower because petitioner was previously released on bond after immigration officials determined he had a credible fear of persecution and that he was not a flight risk or danger to the community, he lived in the country for over eleven years on release without incident, and he has no criminal record. See Pinchi, 2025 WL 1853763, at *2.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner is also entitled to relief on his due process claim.

## V.    RESPONDENTS' REQUEST TO STAY

Respondents' alternative request that this matter be stayed pending a ruling by the Ninth Circuit in Rodriguez v. Bostock, No. 25-6842 (9th Cir.) should be denied because a stay is not in the interests of petitioner, who has been detained since December 13, 2025, and because a stay would not promote the efficient use of scarce judicial resources in a district with some of the

11

highest caseloads in the country.  A stay would put a further strain on limited judicial resources.

**VI.     RESPONDENTS' MOTION TO DISMISS**

For the reasons set forth above, respondents' motion to dismiss should be denied.

**VII.    CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.   The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2.   Respondents' motion to dismiss (ECF No. 7) be DENIED.

3.   Respondents be ordered to IMMEDIATELY release petitioner Jose Lopez (A-206-648-025) and be ordered to provide petitioner with a copy of the release order at or near the time of release.  If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release.

4.   Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified. This injunction does not address other circumstances where detention authority is established under different authority than what is presented in this case (e.g., 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231).

5.   Given petitioner's pro se status, respondents be directed to file, within **seven days** of the adoption of these findings and recommendations, a status report addressing petitioner's status.

6.   The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to

Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 4, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Lope1072.imm.release/2

13